## O'NEILL MANUFACTURING COMPANY *v.* WOODLEY.

1. In an action of trover the plaintiff has the option to "demand a verdict for the damages alone, or for the property alone, and its hire, if any." If he elects to take a verdict for the damages alone, these damages may, at his option, consist of the highest proved value of the property between the date of the conversion and the date of the trial, or the value of the property at the date of the conversion, with interest thereon from that date to the date of the trial, or, if the property is of a character that hire may be recovered, the value of the property at the date of the conversion, with hire of the same from that date to the date of the trial.

2. In an action of trover brought to recover two mules and their hire a verdict in the following words: " We the jury find for the plaintiff $200.00 for value mules, and for hire for 302 days 37-1/2 cents each per day," is sufficiently certain to authorize a judgment to be entered for a gross amount made up of the value of the mules and their hire at the rate and for the time stated in the verdict; and when the judgment is so entered, it will bear interest on the gross amount from the entry of the judgment.

3. The evidence authorized the verdict, and there was no error requiring the granting of a new trial.

Argued May 9, — Decided May 30, 1903.

Trover. Before Judge Reece. City court of Floyd county. November 3, 1902.

*Denny & Harris*, for plaintiff in error.

*Griffith & Weatherly* and *C. E. Carpenter*, contra.

COBB, J. Woodley brought an action of trover against the O'Neill Manufacturing Company, to recover two mules, alleging that each of them was worth $125, and that their hire was worth 50 cents per day each. The defendant filed an answer denying all the material allegations of the petition; and set up by special plea that it held a mortgage executed by Clark Brothers to it, embracing six mules, the two in controversy being among the number; that there was a lien upon these mules both under the law of this State and under that of Alabama, where it had taken possession of the two mules in satisfaction of the debt for which the mortgage was given, and it thereby became vested with the title to the mules; it being alleged that at the time the defendant took possession the title to the mules was in Clark Brothers, who were in partnership with the plaintiff and were colluding together to defeat the payment of the debt due the defendant by Clark Brothers. At the trial the evidence on many of the material issues was conflicting, but there was evidence authorizing a finding that the mules were worth $100 each and 50 cents a day each for hire. There was also evidence which authorized a finding that prior to the execution of the mortgage by Clark Brothers to the defendant they had executed a mortgage to one Coker on the mules in controversy, and that plaintiff had become security for the debt of Clark Brothers to Coker, and at the time of becoming security there had been an agreement entered into between plaintiff, Coker, and Clark Brothers, that if plaintiff was compelled to pay the debt to Coker, he was to take a transfer of Coker's mortgage and the mules would become the property of plaintiff. Coker agreed to transfer his mortgage, and Clark Brothers agreed that, upon the payment of the debt by plaintiff, title to the mules should vest in him. Plaintiff was compelled to pay the debt to Coker, and took a transfer of the mortgage, and Clark Brothers put the mules in possession of plaintiff. All this occurred subsequently to the date of the defendant's mortgage. Plaintiff having carried the mules to Alabama, the defendant sent its debt secured by the mortgage to an attorney of that State for

collection.   With the consent of a member of the firm of Clark Brothers, the mules were taken possession of by the representative of the defendant and brought into the State of Georgia, and the mules were in possession of defendant at the time the action was brought.   The jury returned a verdict for the plaintiff for "$200.00 for value mules, and for hire for 302 days 37-1/2 cents each per day."   The defendant's motion for a new trial was overruled, and it excepted.

1, 2.   In an action of trover the plaintiff has, at his option, the right to "demand a verdict for the damages alone, or for the property alone, and its hire, if any."   Civil Code, § 5335.   If the plaintiff elects to take a verdict "for the damages alone," and the property converted is of such a character that hire for the same may be recovered, the plaintiff has a further right to elect to take as his damages the highest proved value of the property at any time between the conversion and the trial, or the value of the property at the date of the conversion, with interest on that amount to the date of the verdict, or the value of the property at the date of the conversion, with reasonable hire for the same from the date of the conversion to the date of the trial.   Having a right to elect between a verdict for damages and a verdict for the property, he thus has a further right to elect in what way his damages shall be made up. *Schley* v. *Lyon,* 6 *Ga.* 530 (3); *Woods* v. *McCall,* 67 *Ga.* 506 (2); *Ezzard* v. *Frick,* 76 *Ga.* 512 (2); *Moore* y. *Dutson,* 79 *Ga.* 456 (4); *Jaques* v. *Stewart,* 81 *Ga.* 81 (2).   The plaintiff in the present case elected to take a verdict for the damages alone, and also elected that these damages should consist of the value of the property at the date of the conversion, with reasonable hire for its use from that date to the date of the trial.   The verdict of the jury was by its very terms in strict accordance with the election of the plaintiff.   It would have been in accord with the better practice if the jury had calculated the amount of the hire and expressed their verdict in a gross sum, but the verdict sufficiently indicates the intention of the jury and this intention is in exact accord with the law.   It is a mere matter of calculation to ascertain the gross sum which the jury intended to find, and the judgment should have been entered for such gross sum, which would bear interest from the date of the entry of judgment.   If the judgment has not already been entered in this way, the court has power to authorize an amendment to this effect.

In a case where the plaintiff elects to take a verdict for the property and its hire, the hire as found by the jury would be calculated until the property was delivered in accordance with the verdict. *Sanders* v. *Williams*, 75 *Ga.* 283.    But where the verdict is for the value of the property at the date of the conversion, with reasonable hire, no hire would be calculated after the trial, and the damages of the plaintiff would be the value of the property, with the hire from the date of the conversion to the date of the trial added.

There is nothing in any ruling made in this case which conflicts with the rulings in *Mashburn* v. *Dannenberg*, 117 *Ga.* 567.    No question of hire was there involved.    The property in dispute was not of such character that hire could be recovered for the same; and what was then said in reference to the measure of damages in trover cases must be taken in the light of this fact.

3.    The judge charged the jury that the plaintiff was " entitled to the highest proved value, with interest from the time of the conversion."    This charge was error.    The plaintiff is not entitled to recover either interest or hire when he elects to take a money verdict for the highest proved value.    See *Jaques* v. *Stewart*, supra. This error, however, did not prejudice the defendant, because the plaintiff had elected to take a verdict for the value of the mules at the date of the conversion, with hire, and the verdict was in strict conformity with this election.

We find no error of law which required the granting of a new trial, and the evidence authorized the verdict. When the arrangement was made between Coker, Clark Brothers, and the plaintiff, that upon payment of Coker's debt the plaintiff should own the mules, the plaintiff became the owner of the mules, as against Clark Brothers, the moment he paid Coker's debt; and Clark Brothers, recognizing him as the owner, delivered possession of the mules to him.    If the arrangement between Coker and the plaintiff did not have the effect of subrogating plaintiff to Coker's rights as mortgagee, but the effect of it was simply to destroy the lien of Coker's mortgage, then the plaintiff, although he became the owner of the mules, took them subject to the defendant's lien.    Having only a lien, the defendant would not be authorized to take possession of the property from the plaintiff without proceeding to enforce his lien in the manner prescribed by law, and, as we understand it, it is not claimed that either under the law of Georgia or of Alabama

a mortgagee of personal property is entitled to the possession of the property. It is insisted that the defendant's title is complete, because Clark Brothers consented to its taking possession of the property and bringing it to Georgia. At the time this consent was given, however, Clark Brothers had no interest in the property. It was either the unincumbered property of the plaintiff, or his property subject to the defendant's right to enforce its lien in the manner provided by law. A mortgagee of personal property who takes possession of the property in the manner which the defendant did is guilty of a conversion, and the owner of the property may recover his full damages for the conversion. See, in this connection, *Schley* v. *Lyon*, 6 *Ga.* 530, 537. The defendant can not, by asserting its mortgage lien, take advantage of its own wrong in thus seizing possession of the property. The remarks of Patterson, J., in Finch *v.* Blount, 32 Eng. Com. Law Rep. 591, quoted by Judge Warner in *Schley* v. *Lyon*, supra, are pertinent. Said that judge: "I have never heard that where property is taken the plaintiff is to have a farthing damages and the defendant keep the property — that would be allowing the defendant to take advantage of his own wrong." Even a bailee is entitled to recover the full value of the property as the measure of his damages against a wrong-doer, because he is answerable over to the general owner. It would seem for a stronger reason that the general owner should always be entitled to recover full value as his damages against a wrong-doer.

*Judgment affirmed. By five Justices.*